McKEE, APPELLANT, *v.* YOUNGSTOWN STEEL DOOR CO., APPELLEE.

(No. 79 C.A. 140—Decided May 21, 1980.)

*Mr. Staughton Lynd,* for appellant.
*Mr. James Messenger,* for appellee.

LYNCH, J. Plaintiff-appellant, George E. McKee, is appealing the judgment of

the court of common pleas which sustained the motion of defendant-appellee, Youngstown Steel Door Co., for summary judgment.

The record of this case consists of the affidavits of Dominic Mangone, personnel manager of defendant; of Kenneth Williams, staff representative of the United Steelworkers of America who had the responsibility for providing service to the local union representing plaintiff; and of plaintiff.

The record established that plaintiff was employed by defendant from August 15, 1973 to May 9, 1979 when his employment was terminated and that during such employment plaintiff was given twelve reprimands for absenteeism, two reprimands for tardiness or leaving early, one reprimand for leaving his work area, one oral warning for leaving his work area, four suspensions of three days for absenteeism and two suspensions for five days for absenteeism (subject to discharge). After the five-day suspension on November 6, 1978 plaintiff signed the following agreement dated November 28, 1978:

"I, George McKee, Badge Number 0406, in consideration of The Youngstown Steel Door Company's reinstatement of myself, on 11-29-1978, after having been suspended for 23 days, subject to discharge, on 11-06-78, for good cause, the fact of which is acknowledged by myself, hereby agree that if I am suspended, subject to discharge, for cause at anytime within two (2) years from this date, I will not initiate or cause to be initiated or have processed any grievance on my behalf, or seek redress through the arbitration process. Such cause is herein defined as any absence, other than hospital confinement, for a period more than 24 hours, leaving work early, tardiness or any violation of Company rules and regulations. Further, I agree to release and forever discharge the Youngstown Steel Door Company and The United Steelworkers of America from all manner of cause or causes of action, claims or demands which may grow out of any disciplinary action for cause, including suspension, subject to discharge, during such two (2) year period."

Subsequent to the above agreement, plaintiff left work early on March 24, 1979 and April 17, 1979, absented himself from work and failed to report off for which he was given a three-day suspension and was late for work on April 30, May 1, May 2 and May 4. On May 2 plaintiff was reprimanded by his supervisor. On May 4, 1979 plaintiff was suspended for five days subject to discharge for tardiness. He was discharged on May 9, 1979.

On June 19, 1979 plaintiff filed a complaint pursuant to Section 301 of the National Labor Relations Act in which he alleged that the United Steelworkers of America unfairly represented plaintiff by inducing him to sign the "last chance" agreement dated November 28, 1978 and by refusing to permit him to file a discharge grievance because of the "last chance" agreement.

In his affidavit plaintiff stated that on July 17, 1977 he lost his right thumb in an industrial accident while at work with defendant; that when he returned to work on November 6, 1977 he was assigned to the same kind of work as machine operator that he performed before his accident; that he informed representatives of both defendant and the union that he could not do certain things which were part of the work of a machine operator as a result of his handicap because on certain jobs he was not able to grasp the material with his right hand and had to slow down production while using his left hand; that defendant did not change his work assigned as machine operator, causing him both physical and emotional distress; that on November 6, 1978 he was suspended for five days subject to discharge; that before he could return to work, the procedure required a company-union meeting; that on November 28, 1978 plaintiff went to the personnel office of defendant

and "ran into" Doc Stuart, a union representative; that he asked Stuart what the company and the union were going to do about his job; that Stuart went into the personnel office, returned and told plaintiff that defendant was going to discharge plaintiff; that at plaintiff's request Stuart went back into the personnel office a second time; that Stuart returned the second time and informed plaintiff that the only way that he could get his job back was to sign a "last chance" agreement; that plaintiff told Stuart that he would not sign the "last chance" agreement; that Stuart went back into the personnel office a third time, returned and told plaintiff that the only way that he could get his job back was to sign the "last chance" agreement; that plaintiff did not want to sign this agreement but felt forced to sign because he had a wife and family; that he finally told Stuart that he would sign the "last chance" agreement; that they went into a small room inside the personnel office where plaintiff signed the "last chance" agreement; that Mr. Dominic Mangone and another supervisor together with Stuart witnessed plaintiff signing this agreement; that there was no discussion in the small room of plaintiff's reprimand and suspension record; that there was no request by any union representative in the small room that plaintiff be permitted to sign the "last chance" agreement; that at any time that he had left work early, he did so with the permission of his foreman or the company nurse; that he reported off sick on April 19 and 20, 1979 and had a doctor's statement on his illness; that he was given a three-day suspension; that the union filed a grievance on behalf of plaintiff; that defendant refused to recognize the grievance because of the "last chance" agreement; that after plaintiff received his discharge notice he contacted the union president who informed him that the union could do nothing because plaintiff had signed the "last chance" agreement; that the union president referred plaintiff to Mr. Kenneth Williams, staff representative of the union, who arranged a meeting with Mangone; that at this meeting the company representatives stated that plaintiff's discharge would stand, and that Williams said nothing in plaintiff's defense.

In his affidavit, Dominic Mangone, personnel manager of defendant, stated that plaintiff's employment record as to periods of inactive employment due to personal leave, layoff, personal injury or disciplinary leave and record of reprimands and suspensions was set out in Attachment No. 1 of his affidavit; that a copy of the "last chance" agreement that plaintiff signed on November 28, 1978 was set out in Attachment No. 2 of his affidavit; that in 1978 plaintiff worked one hundred forty-one full days and was absent for a portion or all of eighty days; that in 1979 prior to his termination on May 9, 1979 plaintiff worked twenty-eight full days and was absent for a portion or all of seventy-six days; that affiant was present at the union-management meeting held on November 28, 1978; that the company's position was that it had full justification for discharging plaintiff on the basis of his absenteeism record; that plaintiff had failed to improve his record subsequent to previous reprimands and suspensions; that the union representative requested on behalf of plaintiff that he be reinstated on the basis that he sign the "last chance" agreement; that plaintiff agreed to sign the "last chance" agreement; that defendant reinstated plaintiff after he signed the "last chance" agreement; that plaintiff was not discharged because of his visits to the doctor and x-ray laboratory on April 19 and April 20, 1979; that on May 4, 1979 plaintiff was suspended for tardiness; that on May 1 and May 2, 1979 plaintiff was late in arriving for work; that plaintiff's supervisor informed both plaintiff and his union shop steward that plaintiff was in serious trouble again; that on May 4, 1979 plaintiff was again late for work and was

suspended and that plaintiff was discharged for tardiness.

Kenneth Williams, staff representative of the United Steelworkers of America, stated in his affidavit, in pertinent part, as follows:

"Affiant states that to the best of his knowledge and belief the 'last chance' agreement signed by Mr. McKee on November 28, 1978, was voluntarily signed by Mr. McKee as an alternative to his termination. The significance of the agreement was explained to Mr. McKee, and he acknowledged that he understood it.

"Affiant further states that he and other officials of United Steelworkers of America made a thorough investigation into Plaintiff's oral grievance concerning his discharge of May 4, 1979, and made a determination after serious deliberation and consideration that the grievance was without merit. Plaintiff was notified of this decision and the reasons therefor."

Plaintiff's second assignment of error is that the trial court erred in granting summary judgment on the issue of his failure to show that his union breached its duty of fair representation. In its motion for summary judgment defendant raised this defense on its first ground for summary judgment.

In *Vaca* v. *Sipes* (1967), 386 U.S. 171, the court held that a union breaches its duty of fair representation when its conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.

In *Harris* v. *Chemical Leaman Tank Lines, Inc.* (C.A. 5, 1971), 437 F. 2d 167, the court stated as follows on page 171:

"* * * [I]n its role as the exclusive agent for all employees in the bargaining unit, the union has the power to sift out frivolous grievances, to abandon processing of a grievance which it determines in good faith to be meritless, and to settle disputes with the employer short of arbitration."

In the instant case there was nothing in the record that indicated that any union officer was personally hostile to plaintiff or that the union acted at any time other than in good faith.

We feel that the determinative question in this case is whether subject union fairly represented plaintiff the time that he signed the "last chance" agreement on November 28, 1978. The record establishes that at that time defendant's position was that it was fully justified in discharging plaintiff on the basis of his absenteeism record. Both defendant and Stuart, the union representative were confronted with plaintiff's record which has already been summarized.

In administering the grievance machinery as statutory agent of the employee, a union must, in good faith and in a nonarbitrary manner, make decisions as to the merits of particular grievances. *Vaca* v. *Sipes, supra,* at 194.

On the merits of plaintiff's position at the time that he signed the "last chance" agreement, there is nothing in the record to indicate that the request of Stuart to defendant that plaintiff be reinstated on the basis that he sign the "last chance" agreement was arbitrary, discriminatory or in bad faith. The record establishes that plaintiff signed this "last chance" agreement because of the pressure of defendant's threat to discharge him because of his work record rather than from any pressure from the union.

The threat of defendant to discharge plaintiff was apparent to plaintiff because defendant was obviously not interested in talking to him. The record indicates that all the discussion as to the reinstatement of plaintiff prior to the signing of the "last chance" agreement was done between defendant and Stuart without plaintiff being present.

At that time plaintiff was confronted with the choice of being discharged by defendant because of his past record of absenteeism and filing a grievance because of such discharge or signing the "last chance" agreement which, in the

judgment of the union representative, was the best that could be accomplished with defendant because of plaintiff's prior record. Plaintiff was not happy with the choice that he had to make, but he was forced to make a choice and he elected to sign the "last chance" agreement. During the entire time, Mr. Stuart remained with plaintiff and represented him before defendant's personnel manager.

Subsequent to the signing of the "last chance" agreement, plaintiff was tardy for work several times for which defendant suspended him and subsequently discharged him. Plaintiff admits that the staff representative of the union arranged a meeting with the company representatives who refused to reinstate plaintiff but that the staff representative said nothing in his behalf. The staff representative stated that he and other officials of subject union made a thorough investigation into plaintiff's oral grievance concerning his discharge of May 4, 1979 and made a determination that such grievance was without merit. The fact that plaintiff signed the "last chance" agreement supports the decision of the union.

Plaintiff stresses the fact that he lost his right thumb in an industrial accident on July 17, 1977 while at work with defendant as a defense to his discharge and that this handicapped his ability to perform his work as a machine operator. However, defendant did not discharge plaintiff because of his work performance, but because of his persistent tardiness and absenteeism in reporting for work. There is nothing in the record of this case to show any connection with plaintiff's handicap because of the loss of his right thumb and his persistent absenteeism and tardiness.

For the foregoing reasons, we overrule plaintiff's second assignment of error.

Plaintiff's first assignment of error is that the trial court erred in holding that a company-defendant might raise as a defense a grievant's alleged failure to exhaust internal union procedures.

In its motion for summary judgment defendant raised the defense that is the subject of this assignment of error as its second ground for such summary judgment. However, the trial court sustained such motion for summary judgment without stating the basis for such decision.

Since we have held under plaintiff's second assignment of error that he failed to show that his union breached its duty of fair representation, we assume that it was on this basis that the trial court made its decision. We feel that there was no reason for the trial court to consider whether plaintiff failed to exhaust internal union procedures under the facts of this case. Therefore, we overrule plaintiff's first assignment of error. The judgment of the trial court is affirmed.

*Judgment affirmed.*

DONOFRIO, P.J., and O'NEILL, J., concur.